UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

| | |
|---|---|
| JOHN J. FRAZER, | ) |
| Plaintiff, | ) No. 5:23-CV-193-REW-CJS |
| v. | ) |
| P. MULLINS, RN, et al., | ) **RECOMMENDED DISPOSITION** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff John Frazer filed an Emergency Motion for Preliminary Injunction and Temporary Restraining Order (R. 46) requesting the Court order the Bureau of Prisons to transfer him to a different place of incarceration, or otherwise convert his remaining time to supervised release. The presiding District Judge has entered a standing referral order assigning to the undersigned pretrial authority according to 28 U.S.C. § 636(b). (R. 47). Under § 636(b), a Court may "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)," among which is pretrial injunctive relief. *See* 28 U.S.C. 636(b)(1)(B). Pursuant to these guidelines, the Court enters the following Recommended Disposition, recommending that Frazer's Emergency Motion for a Preliminary Injunction and Temporary Restraining Order (R. 46) **be denied**.

I.      **FACTS AND PROCEDURAL HISTORY**

Plaintiff John Frazer, an inmate at the Federal Medical Center, Lexington (FMC Lexington), brings this action against twelve FMC Lexington employees alleging violations of 42 U.S.C. § 1983. (*See* R. 1). He asserts that Defendants violated his Eighth Amendment rights

through deliberate indifference by falsifying his medical records causing him several bouts of hypoglycemia due to his type 2 diabetes mellitus. (R. 1, at Page ID 3-4).

On September 7, 2022, Frazer self-reported hypoglycemia because he was not able to eat snacks in the evening. (R. 49-1 at Page ID 396, R. 49-3 at Page ID 409-10). On December 5, 2022, he was evaluated for his diabetes and reported skipping breakfast, eating snacks in the evening, and generally consuming more junk food. (R. 49-3 at Page ID 412-13). Because of his eating habits, he was not eligible for supplemental feeding the evenings via a snack bag and was counseled to begin eating consistent meals with consistent carbohydrates. (*Id.* at Page ID 416). The physician placed him on a "sliding scale" which dictated part of his daily insulin dosage upon current blood glucose level, while retaining a consistent nightly dose of glargine glucose. (*Id.* at Page ID 413). The examiner stated that prior to mid-November 2022, Frazer's blood sugar levels were routinely below 150 mg/dl, and from mid-November to December his level was routinely above 200 mg/dl. (*Id.* at Page ID 413).

At a diabetes follow-up encounter on March 6, 2023, Frazer still noted he still consistently skipped breakfast, and the physician discontinued the "sliding scale" insulin injections since it was "causing confusion for patient's every day insulin requirements . . . ie 5 units reported on [medical records] when no regular insulin was actually administered." (*Id.* at Page ID 419). Frazer was also prescribed glucose tablets in case his blood sugar dropped too low. (*Id.*). However, this change was reverted at Frazer's request on March 9, 2023, as he believed the change was "a retaliating thing." (*Id.* at Page ID 422-23). Frazer again requested an insulin dose adjustment back to pre-March 6th levels on March 10, 2023, and after his provider sought to follow up later when more data was available, he again reported to medical on March 14, 2023, requesting the same change to his dosage. (*Id.* at Page ID 425-27). On March 16, 2023, his provider reverted to the

2

"sliding scale" insulin dosage. (*Id.* at Page ID 428). On June 9, 2023, Frazer requested to discontinue the set nightly insulin dose and only receive the "sliding scale" insulin injection. (*Id.* at Page ID 430-35). However, his physician continued a nightly dose of 25 units of glargine insulin, and the "sliding scale" insulin injections three times a day but discontinued an additional two-unit regular insulin injection three times a day. (*Id.*). This insulin scheme was renewed on April 29, 2024, when Frazer also noted an absence of recent hypoglycemic episodes. (*Id.* at Page ID 439).

On June 27, 2024, Frazer suffered an emergency hypoglycemic episode after becoming overheated and suffered nausea, weakness, and dehydration. (*Id.* at Page ID 442-44; R. 49-1 Page ID 397-98). He reported taking two glucose tablets prior to the arrival of medical and recovered quickly. (R. 49-3 at Page ID 442).

## II.   ANALYSIS

As an initial matter, Frazer seeks injunctive relief that is not permitted in a 42 U.S.C. § 1983 action. A prisoner cannot seek or obtain earlier release from custody through an injunction entered in a civil rights action; such relief can only be obtained by filing a petition for and securing a writ of habeas corpus. *See Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."); *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (holding that where a prisoner asserts Eighth Amendment violations arising from medical conditions which can only be remedied by release from custody, habeas corpus is the only proper mechanism to seek that remedy); *Wershe v. Combs*,

3

763 F.3d 500, 504 (6th Cir. 2014) (noting that "where the relief sought is a determination that he is entitled to immediate release or a speedier release from that imprisonment, the prisoner must pursue relief through a writ of habeas corpus, not through § 1983.").

"A prisoner has no constitutional right to incarceration in any particular prison." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Yet, a § 1983 claim is the proper avenue for a prisoner to seek relief in the form of improvement of prison conditions or transfer to another facility. *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020); *see Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (holding that § 1983 is the correct vehicle for a prisoner to challenge conditions of confinement). The United States cites *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) as a means of vitiating Frazer's request for a transfer to another facility, yet the issue in *Alam* was regarding a compassionate release petition under 18 U.S.C. § 3582(c)(1)(A), not under § 1983, nor was a transfer to another facility even sought. *Alam*, 960 F.3d at 832.

However, if examined on the merits, Frazer's argument fails. A preliminary injunction is an extraordinary remedy which should only be granted if the movant carries the burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Further, where an inmate seeks an order enjoining prison officials, the court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *see also Overstreet*, 305 F.3d at 573 (setting out a similar four-part test). "These factors are not prerequisites, but are factors that are to be balanced against

4

each other." *Overstreet*, 305 F.3d at 573. The standard for a temporary restraining order is the same as a preliminary injunction with an emphasis on the irreparable harm factor. *Dinter v. Miremami*, 627 F.Supp.3d 726, 730 (E.D. Ky. 2022).

Frazer cannot show a substantial likelihood of success as he fails to address the aspects of his deliberate indifference claims. To prevail on such a claim, a plaintiff must demonstrate both an objective and subjective component. *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). A prisoner meets the objective component by proving prison officials have rendered "grossly or woefully inadequate care—not just care that falls below a professional standard." *Id.* at 535. Generally, this requires admission of medical evidence in the form of expert testimony. *Id.*; *See Rhinehart v. Scutt*, 894 F.3d 721, 740-43 (6th Cir. 2018). If the objective component is met, a prisoner must proceed to prove that medical staff knew of and disregarded the serious medical needs of the prisoner. *Phillips*, 14 F.4th at 535; *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that the subjective requirement requires a showing of a "sufficiently culpable state of mind" of more than mere negligence" since "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.").

The evidence in the record is mixed at best. The Frazer's medication records for June 2024 indicate that Defendant Mullin and other personnel unnamed in this case incorrectly injected him with more insulin on four occasions. (*See* R. 46-1 at Page ID 364). On June 8, 2024, "H. Shelton," not a named party in this case, injected him with two units of insulin when Frazer should have received only one unit with a blood glucose level of 140. (*Id.*) On June 12, 2024, "M. Trosper," another unnamed party, injected Frazer with five units of insulin when two units were appropriate with a blood glucose level of 224. (*Id.*) On June 20, 2024, Defendant Mullin injected him with 5 units of insulin twice, when according to his glucose level he should have received only 2 units of

5

insulin. (*Id.*). Finally, on June 26, Frazer's blood glucose level was 182, but he received 5 units again from "H. Shelton." (*Id.*). However, prior to Frazer's hypoglycemic episode on June 27, 2024, his own medical records indicate that he consistently failed to report for his morning glucose injection every day in June 2024, apart from two instances when the records lack any notations. (R. 49-3 at Page ID 442-43, R. 46-1 at Page ID 364). Additionally, he refused his nightly glargine insulin injections twice in June 2024, with two more nights with no notation. (R. 46-1 at Page ID 364). There is an insufficient basis to find that Frazer's care is "grossly or woefully inadequate," and he fails to sufficiently demonstrate that the few extra doses caused his hypoglycemic episode on June 27, 2024, or that Defendant Mullins possessed a state of mind more than mere negligence.

Frazer cannot show irreparable harm. Irreparable harm "must be actual and imminent, and not merely remote or speculative." *Agney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006); *Roden v. Floyd*, 2:16-cv-11208, 2018 WL 6816162, at *4 (E.D. Mich. Nov. 13, 2018).

Frazer asserts that the Defendants "forced hypoglycemia" upon him, when his medical records indicate only a single instance of hypoglycemia, and that the medical staff were more worried about high glucose levels. (*Id.*; R. 49-1 at Page ID 397; R. 49-2 at Page ID 442-45; *see Id.* at Page ID 449, 452, 454 (August 6, 2024, blood test indicating high A1C levels suggesting high blood glucose levels in three months prior to test)). Much of Frazer's early medical history at FMC Lexington involved medical staff opining that he needed to consistently eat breakfast to help regulate his blood sugar levels. (*See* R. 49-3 at Page ID 412-19). More recently, Frazer reported no hypoglycemic episodes to medical staff during his appointments on March 16, 2023, and April 29, 2024. (R. 49-1 at Page ID 396-97; R. 49-3 at Page ID 428- 49, 436-41). He does not adequately demonstrate his hypoglycemia on June 27, 2024, occurred because of the four instances of medical staff incorrectly administering too much insulin that month, as opposed to

6

other irregularities in his medical record preceding the episode, such as him not having glucose tablets on him when he was working that day, refusing insulin several times, or his inconsistent food intake. (*See id.* at Page ID 442-47; R. 49-1 at Page ID 397-98; R. 46 at Page ID 364-65).

Frazer's conclusory contention is simply too remote or speculative to show irreparable harm. *See Lemay v. Correct Care Solutions*, 2020 WL 4475425, at *3 (M.D. Tenn. Aug. 4, 2020) (finding no irreparable harm when the "evidence in the record reveals that Plaintiff's Eighth Amendment claim is more likely a disagreement with Defendants' choice of treatment than deliberate indifference towards Plaintiff's medical needs").

Frazer also cannot show that the balance of equities tip in his favor or that an injunction is in the public interest. "[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context." *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010). Courts in this circuit find that the third and fourth elements of a preliminary injunction test weigh in the favor of the prison officials when a preliminary injunction is brought against them by a prisoner. *See Austin v. Franklin Cnty., Ky.*, No. 3:18-CV-00059-GFVT-EBA, 2019 WL 2018463 (E.D. Ky. Feb. 1, 2019); *McDonald v. Springfield*, No: 5:18-CV-P93-TBR, 2018 WL 3623770, at *4 (W.D. Ky. July 30, 2018); *Brown*, 2007 WL 851859, at *2; *Gresham*, 2010 WL 6001594, at *2.

### III. CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that John Frazer's Emergency Motion for a Preliminary Injunction and Temporary Restraining Order (R. 46) be **DENIED.**

7

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd,* 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen (14) days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed this 26th day of November, 2024.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\Judge-CJS\DATA\Orders\civil lexington\2023\23-193-REW R&R injunction.docx